Good morning, Your Honors. May it please the Court, Arwin Swink appearing on behalf of Petitioner Wei Fang. This case presents the Court with a troubling decision in which the Board of Immigration Appeals disregarded its own guidelines and committed substantial legal errors. Although the government contends that the Court lacks jurisdiction to consider these errors, nothing could be farther from the truth. Under this Court's precedence, the exhaustion requirement is satisfied where an alien specifies a challenge to a particular issue or claim presented by the immigration judge's decision. Now the issue presented in this case, the primary issue which the government is now in its second 28-day letter arguing has been waived, is whether Mr. Fang challenged the immigration judge's credibility decision, in particular the finding that he is, in fact, a Christian. The issue, however, would have been waived if Mr. Fang had failed to raise the credibility issue with the Board, as the petitioner in Zara v. Ashcroft did. Zara, however, is immediately distinguishable from this case, where Mr. Fang actually devoted more than 15 pages of his brief to the Board of Immigration Appeals. He's challenged the immigration judge's erroneous credibility finding. And do we have that on the record? Yes, Your Honor, we do. Where is that? The Board of Immigration – the brief to the Board of Immigration Appeals is... The decision or the brief? The brief, where he raises... I think he's referring to the brief. Yes, Your Honor. Just a moment. So the brief is in the record from pages, looks like, 8 to 28. Yes, and where is he challenging, then, the credibility finding? That challenge begins at page – I think the substance of it is best found at pages 19 to 28, although it does begin shortly before that. Moreover, where the Board expressly addresses a portion of the immigration judge's decision, that issue has been found to be exhausted. I think this Court's decision in Sagemark v. INS is probably best on point for that. This is a case where the agency was... Wait a second. If the Board addresses the issue? Yes. Yes, Your Honor. Go ahead. So this is a case much like that in Socap Gonzalez, where the agency was aware of the problem. It did apply its expertise, and it did exercise its discretion. As this Court has found, it would be bizarre and decidedly unfair for the petitioner, for the Court to review that decision. That's at Socap Gonzalez at 272 F. 3rd at page 1186. Finally, this is an area of law which is particularly clear. The Board has had repeated opportunities to clarify the state of the law surrounding what constitutes sufficient basis on which to... Well, if he's got a brief, and I'm now on page AR 19, the subhead of which is C, immigration judge's adverse credibility finding is impermissible because it is based on minor inconsistencies. There it is. I mean, he's challenging the adverse credibility finding. Thank you, Your Honor. Okay. We'd agree. So looking first to Mr. Fang's application for asylum, the Board's language shows that the Board accepted Mr. Fang's testimony regarding the existence of changed circumstances, which materially affected his application for asylum. Specifically, the Board concluded that Mr. Fang did not file within a reasonable period of learning of those changed circumstances. So the Board clearly in this instance disregarded or chose to overrule the immigration judge's adverse credibility finding with regard to this specific point. And therefore, Mr. Fang's testimony on this point must be accepted as true. Thus, the question of the timeliness of Mr. Fang's application for asylum becomes a straightforward application of law to fact, over which this Court plainly has jurisdiction pursuant to 8 U.S.C. 1252 A2D as amended by the Real ID Act. Here, Mr. Fang filed his application for asylum within four months of learning of the changed circumstances which affected his eligibility. A delay of less than four months was plainly reasonable given the circumstances. Specifically, Mr. Fang's grief over the death of his father, his limited English skills and lack of a support network here in the United States, his uncertainty about where and how to apply for protection, and his initial desire to return to China for his father's funeral. That desire was only abated after his wife urged him not to return under any circumstances because of the heightened danger that he would face after having fled while under government supervision. Accordingly, we would urge the Court to reach the issue of whether the delay was reasonable under the circumstances and conclude that in light of all of the circumstances, it was. With regard to the Board's remaining findings, in this case, the immigration judge provided a veritable laundry list of grounds for doubting Mr. Fang's credibility, none of which are supported by substantial evidence. The Board specifically adopted only three of those reasons. Specifically, Mr. Fang's inability to remember the name of the church he attended as a child, his inability to recall the name of the pastor that he attended at a church in Dallas, and the lack of documentation about his church attendance while in the United States. With regard to the first issue, Mr. Fang testified that his parents took him to a church when he was, quote, little, seven or eight years old. That's in the record at page 126. He further explained that after the Cultural Revolution in 1966, all the churches were gone. So by the time of his hearing, nearly 40 years had elapsed since Mr. Fang last attended a formal church in China. The only thing that troubles me, not about that, I mean, that seems to me that was a long time ago and so on, is after he gets to this country, he can see where the church is, but he doesn't appear to have gone there very regularly, which is one of the things the BIA notes. How much of a Christian is he, or I'll put it this way, how much of a Christian are we compelled to find that he is? That's a good question, Your Honor. I think in this case, cultural sensitivity is particularly important. Mr. Fang testified that he had spent over 40 years of his life doing home study with other Christians. So attending a formal church was something a little bit unusual for him. Now, he specifically testified that he attended the church in Dallas, Texas, sometimes, and he knew the name of the church and the intersection where it was located. On the day of the hearing, he couldn't remember the name of the pastor, which, frankly, to me strikes me as just a minor lapse in his memory, which sheds no light on the basis of his fear of return. The IJA says, and holds it against him, that he doesn't know the difference between the Protestant Bible and the Christian Bible. The BIA doesn't mention that. If we're talking about sustaining an adverse credibility finding, are we limited to the particular points raised by the BIA, or do we treat the points raised by the BIA as merely examples among others? In this case, Your Honor, because the board specified the specific bases on which it relied, we would look to those bases only. But it didn't say, and only these. No, that's correct, Your Honor. Often I'll read a BIA decision and it says, while we don't agree with all the decisions or all the reasons given by the IJA, we find the following, one, two, three. Yes. The BIA didn't do that here. That's true, Your Honor. And if the court finds that it can look to the decisions relied upon by the immigration judge, I would urge the court, again, to assess whether or not those rise to the level of substantial evidence. They do not. Particularly the issue that Your Honor cited was whether or not Mr. Fang could address the difference between the Catholic and the Christian Bible. In point of fact, he testified that he only That's not the way he talked. I wouldn't say the Catholics are non-Christian. Oh, yes, Your Honor. I'm sorry. His particular brand of Christianity. I stand justified. We correct it. That's the way he talked. I understand. Yes. Yes, Your Honor. Now, that issue was particularly problematic because he was only asked one question. And in response to the question, what is the specific difference, he said, quote, how to say. And that's at page 144 of the record. Now, to me, that indicates that he was thinking about a response. Unfortunately, the very next question he was asked was, quote, well, what was it about the church in addition to the Bible being different that kept you from feeling that this was a church that you could belong to? Now, that question moved him away from that issue. And the immigration judge never notified Mr. Fang that the issue gave him cause to doubt Mr. Fang's sincerity or the validity of his beliefs. I wouldn't worry about it. Ninety percent of Christians, Protestant and Catholic, don't know what the differences are. Thank you, Your Honor. That was probably the test of belief. None of them would pass. I would just like to turn the court's attention, if I may, to one of the other immigration judge's stated reasons for doubting Mr. Fang's credibility, which was his statement that Mr. Fang had attended some sort of a sex resort in Thailand. Now, that's a flat misstatement of the record. In fact, what Mr. Fang said was that while on a tour in Thailand, he witnessed several cultural performances, including one where he saw individuals dancing in bikinis who may have been transvestites or transsexuals. I raise this because it's emblematic of the IJ's tendency to disregard Mr. Fang's testimony in light of his own beliefs about what that testimony should have said. I'm out of time. Thank you. Listen carefully to what the government says because we will give you a minute to respond. Thank you very much. Well, Mr. Canna, let me ask you right off. As I read this, there were two little lapses of memory, which was so trivial. I couldn't imagine a reasonable person basing a credibility determination on them. Do you think it was serious that he couldn't remember what the church was when he was seven or eight or the name of the pastor in Texas? Your Honor, I think that. Really, you come here, you represent the great government of the country, and you really think those are serious things? Your Honor, if I were the immigration judge, I would not have based my decision on an adverse credibility finding on those grounds. However, there are several issues in this case that I think go beyond just simply the credibility determination. First, there are two credibility findings. First relates to the changed conditions. There is nothing in the board's decision that suggests that the board is overruling the immigration judge's adverse credibility determination as to changed conditions. And, in fact, and this kind of goes to both goes to also to the exhaustion argument, the regulations in effect at the time of this decision currently and that were in effect at the time of this board decision was issued is 8 CFR 1003.1 D3. 1003.1 D3. Okay. And that regulation sets forth the board's scope of review, and it specifically provides that the board will not engage in de novo review of findings of fact by the immigration judge. Facts determined by the immigration judge, including credibility determinations, shall be reviewed only for clear error. So in light of that, I think there's nothing in this decision, the board's decision, that suggests that the board found clear error as to the adverse credibility determination underlying the changed circumstances finding. That being the case, their facts are disputed as to changed conditions. Because they are disputed, Ramadan and Husayev and the other cases don't apply. 8 U.S.C. 1252, the Real ID Act, did not restore this court's jurisdiction. Rather, the bar to jurisdiction at 8 U.S.C. 1158 A2D limits this court from reviewing the timeliness issues of the asylum application. The facts are disputed regardless of the merits of, you know, the grounds for that dispute. They are disputed, and so the court doesn't have jurisdiction to review that determination. So if the BIA doesn't discuss the credibility issues, right, that the IJ determined, from that we can what? Assume that the board concluded what? I think you can assume that the board concluded there was no clear error in the determination. The board's language is we agree with the immigration judge's determination that the respondent is statutorily ineligible for asylum because he did not file his application within one year. Further, respondent did not file within a reasonable period after learning of changed circumstances. Well, just a minute. The IJ makes an adverse credibility determination, right? Yes, Your Honor. And the board is silent about that. What does that mean? You're saying that means the board adopts the IJ's adverse credibility determination? I think that's correct, Your Honor, because what there is in the immigration judge's decision, there's not a determination that she does not say I don't believe your facts that you're stating. And if I did, I would say I don't believe those are changed circumstances. She simply says I don't believe you, therefore I'm going to find no changed circumstances. So there's no determination by the agency whatsoever whether these facts, as are alleged, constitute changed circumstances. So there's nothing to reverse other than this dispute of fact, which the court doesn't have jurisdiction to review. Well, don't we have cases that say that if the BIA is silent on the issue of credibility, in spite of the fact that the IJ makes an adverse credibility finding, then we should presume that the BIA found the petitioner credible? I don't think that that would – yeah, there are cases to that effect. I'm not sure that that would apply here because I think it's – Well, why not? Well, because, Your Honor, here it's – they're not – there's no discussion of the merits. It's one thing where the board simply doesn't make an explicit finding or an immigration judge doesn't make an explicit finding and has a decision that sort of suggests that I don't really believe you, but there's no explicit finding. Then, yes, this court will presume. But it's another thing where the immigration judge has said I don't believe you, there's no discussion about reaching the merits, and the only thing we have in the board's decision is to say we agree. Well, you know, I'm looking what the – the IJ does have an adverse credibility finding. But as to the death of the father, the IJ says something different. The IJ says, quote, I highly question whether his father actually died. I'm on AR 68 or page 8 of the IJ's decision. That's not – he doesn't say I don't believe it. Now, am I supposed to import the adverse credibility finding from later in the opinion back to here to say more than merely highly question? The IJ simply didn't believe it? No, Your Honor. It's at page 67 of the IJ's decision. It's the first sentence in the second full paragraph. This court will make an adverse credibility – adverse finding of credibility against this respondent on the one-year issue. Ah, okay. So, yeah, it's an explicit separate finding. I missed that sentence. Okay. And I guess, you know, in addition to the – so I just don't believe that there's jurisdiction as far as the change for circumstances. Could you – time's running on you. Could you address the adverse credibility which remains relevant as to the withholding? Yes. Because that, I think, we do have jurisdiction over, even under your theory of the case. Right. I mean, I guess if – I want to make clear just – I don't – my argument as far as exhaustion is not that Fang did – Mr. Fang did not challenge the adverse credibility determination. It's that he does not address some of the grounds in the immigration judge's decision. Oh, goodness. What about – okay. What's your response to Ms. Williams' argument that, well, if she raised adverse credibility generally, I mean, that's sufficient to raise – in her brief to the board? Right. I'm not sure that that's the case, given what we have here is a situation where there are a number of – the immigration judge makes an adverse credibility determination on a number of grounds. The alien appeals and says it's wrong because some of those grounds are not good. And the board simply says that we find no clear error, points out two of the grounds that aren't challenged, and moves on. I think if – so it's not clear whether the board is actually saying, oh, we find these sufficient, or whether they're considering any of these arguments. The exhaustion argument you're arguing for is preposterously unworkable, given the level of practice in front of the board, and you know it, meaning the number of questions that go to the board with – I mean, this briefing is pretty good, but the number of questions that go to the board on absolutely terrible briefing. If our holding – or if our rule has to be you've got to mention specifically everything you challenge in order to exhaust an issue before the board. You say adverse credibility finding is wrong, and then you get one of these nonsense briefs that we see all the time. Your argument is going to be pretty much everything is going to be waived. That would be totally unworkable, given how the system is operating. Well, Your Honor, if that's the case, then you're suggesting then that the board is under an obligation to consider issues that the alien's attorney doesn't raise because they're not – Well, it depends on how you define issue. The issue of adverse credibility is clearly raised, and the board is on notice that that's in front of them. And then to say every little item of adverse credibility has to be mentioned in the brief, otherwise as a way for further proceeding, that strikes me as unworkable. Well, Your Honor, I think that if that's – it's not clear what the board's basis is here. It's not clear that they're saying we think these are good enough or that we think we're just not going to – the board certainly, just as this Court has waiver rules, it's not required to consider every – You're over time, but I want to give you a chance. What in this record, in your view, supports the adverse credibility finding? Your Honor, I think that, as you pointed out, the – in his written statements submitted with the asylum application – Could I ask – I want to ask Judge Fletcher a question just so I can follow this discussion. Are we referring to a specific adverse credibility finding now, or are you – which adverse credibility are you talking about? I'm referring to the one that suggests that he's not credible as to the merits of his claim. Is that – Well, then that's – that was my question. I'm – I've moved past the father, death, changed circumstances. I'm sorry. I should have been more specific. In his – in his statement, he says that he came to the United States – this is page 439. After I came to the United States, I was moved to tears when I saw the brothers and sisters seeing people in the United States enjoy complete freedom of religious belief, basic human rights. That was because – and he goes on. And then, as you pointed out, he doesn't seem to – he also claims that he's – you know, he's had this home church and he's been arrested and beaten, and then – which causes him to flee, yet not file for asylum. Then he comes here and he apparently ships Bibles back to his family if his claim is – Well, you were asked what was the specific statement. Can't you get to that? I don't know that there's a specific statement, Your Honor. Okay. I mean, you've wandered all over the place. We know the – my goodness. You know, sometimes if you've made a mistake, the government's made a mistake, you can say so. Your Honor, I – But on behalf of a renegading position, sometimes it's just not that bad. But anyway, you've tried – you've done your best. Thank you, Your Honor. We do consider and routinely do remand certain cases where we find that they're not sufficiently based. This case was not. And so because we feel there are some jurisdictional issues, we've pressed ahead with our – Thank you very much, Your Honor. Thank you. Would you like a minute to respond? Please do, Your Honor. You don't have to take it. I don't think I can take it. You know, when you're ahead, sometimes you have to sit down. Thank you, Your Honor. There were just two points that the government raised. I'll remember that. Very good. There were just two points that the government raised, which I would like to briefly address. The first is the issue of whether or not the Board of Immigration Appeals adopted the IJ's findings with regard to the one-year issue. And I think it's notable that the immigration judge's decision at page 63 says that Mr. Fang's application clearly was filed beyond the one year. And that is the portion of the IJ's decision that the Board adopts. It says we agree with the immigration judge that Mr. Fang is statutorily ineligible for asylum because he did not file his application within one year of his admission. Further, the respondent, in this case the petitioner, did not file within a reasonable period. So, yes, the Board did adopt the uncontested finding that the application was filed more than one year after the entry. Okay, you've got 14 seconds. If you've got a point, too, you better get to it. I'll rest there, Your Honor. Thank you. Thank you. Thank both of you for your argument. Fang v. Gonzalez is now submitted for decision.
judges: Noonan, Tashima, W. Fletcher